UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

LAUREL STADTMUELLER,

        Plaintiff,

v.

        Case No. 19-cv-620-pp

FRANK J. BISIGNANO,

        Defendant.

---

**ORDER GRANTING DEFENDANT'S MOTION TO ALTER JUDGMENT (DKT. NO. 27), VACATING CURRENT JUDGMENT AND DENYING AS MOOT PLAINTIFF'S MOTION FOR ATTORNEY FEES (DKT NO. 29)**

---

The plaintiff appealed a 2019 decision by the Commissioner denying her application for disability insurance benefits and supplemental security income benefits. In 2019, the parties briefed the appeal, and on March 18, 2021, the court conducted a hearing, reversed the decision of the Commissioner and remanded the case under Sentence Four of 42 U.S.C. 405(g). Dkt. No. 24. At the time of the hearing, the court gave both parties the opportunity to raise new arguments. Dkt. No. 26 at 4.

About a month later, on April 15, 2021, the defendant filed a motion to alter or amend judgment under Rule 59(e), arguing that higher court decisions issued after the parties had submitted their briefs—and a decision issued after this court had entered judgment—had confirmed that the Administrative Law Judge (ALJ) had adequately accommodated the plaintiff's moderate limitations

1

in concentration, persistence or pace. Dkt. No. 28 at 1. The plaintiff did not respond to the defendant's motion.

Two months later, the plaintiff filed a motion for attorney fees. Dkt. No. 29. The Commissioner opposes that motion on the ground that it is premature, but does not otherwise oppose the request. Dkt. No. 39.

The court regrets the amount of time it has taken to rule on these motions. For the reasons explained below, the court will grant the unopposed motion to alter or amend judgment and deny as moot the plaintiff's motion for attorney's fees.

## I. Defendant's Motion to Alter or Amend Judgment (Dkt. No. 27)

### A. Standard

Rule 59(e) allows a court to alter or amend a judgment if the party files the motion "no later than 28 days after the entry of judgment." Fed. R. Civ. P. 59(e).1 "The rule essentially enables a district court to correct its own errors, sparing the parties and the appellate courts the burden of unnecessary appellate proceedings." Russell v. Delco Remy Div. of Gen. Motors Corp., 51 F.3d 746, 749 (7th Cir. 1995) (citation omitted). "A Rule 59(e) motion can be granted only where the movant clearly establishes: '(1) that the court committed a manifest error of law or fact, or (2) that newly discovered evidence precluded entry of judgment.'" Barrington Music Prods., Inc. v. Music & Arts Ctr., 924 F.3d 966, 968 (7th Cir. 2019) (quoting Cincinnati Life Ins. Co. v. Breyer, 722 F.3d 939, 954 (7th Cir. 2013)). "A 'manifest error' is not demonstrated by the disappointment of the losing party." Oto v. Metro. Life Ins.

2

Co., 224 F.3d 601, 606 (7th Cir. 2000). Rather, "[i]t is the 'wholesale disregard, misapplication, or failure to recognize controlling precedent.'" Id. (quoting Sedrak v. Callahan, 987 F. Supp. 1063, 1069 (N.D. Ill. 1997)). Furthermore, "[a] party may not use a motion for reconsideration to introduce new evidence that could have been presented earlier." Id. (citing Caisse Nationale de Credit Agricole v. CBI Indus., Inc., 90 F.3d 1264, 1269 (7th Cir. 1996)).

B. The Court's Ruling

The court affirmed the Commissioner in all respects except one: the court found that the ALJ had failed to include a moderate limitation for concentration, persistence and pace in the finding regarding the plaintiff's residual functional capacity (RFC) and the hypothetical posed to the vocational examiner (VE). Dkt. No. 26 at 44. The court relied on Seventh Circuit case law holding that both the "hypothetical that the ALJ poses to the vocational examiner and the actual residual functional capacity assessment itself has to incorporate all the plaintiff's limitations supported by the medical record, even moderate ones in concentration, persistence and pace." Id. at 22 (citing Crump v. Saul, 932 F.3d 567, 570 (7th Cir. 2019))." The court explained that an ALJ generally may not rely solely on catch-all terms like "simple, repetitive tasks," because there is no "way to conclude whether or not the ALJ actually accounted for the problems that the particular [plaintiff] has in persistence and pace." Id. (citing DeCamp v. Beryhill, 916 F.3d 671, 676 (7th Cir. 2019).

The court focused on the RFC. The ALJ had limited the plaintiff to:

simple, routine and repetitive tasks; she can receive only verbal work instructions; she should work only in a low-stress job defined as

3

> having only occasional decision-making and occasional changes in the work setting; she should engage in work establishing only production quotas that are based on end-of-workday measurements without fast-paced production quotas; and she should have only occasional interaction with the public and coworkers.

Id. at 24; Dkt. No. 12-3 at 20. The court determined that only some of those limitations addressed the plaintiff's moderate limitations in concentration, persistence or pace.

The court found that the ALJ's limitation to simple, routine and repetitive tasks did somewhat address the plaintiff's problems with concentration, persistence and pace. Dkt. No. 26 at 25. The court recounted that the ALJ had cited to an opinion by state agency psychologist Dr. Val Bee opining that the plaintiff might have problems concentrating on complex or simultaneous demands, although Dr. Bee didn't fill out the concentration, persistence and pace section of the report, including her assessment in a later section of her report. Id. at 25-26. The court found that the limitation that the plaintiff receive only verbal instructions related more to the plaintiff's inability to remember or apply instructions than to concentration, persistence and pace. Id. Likewise, the court found that the limitation to occasional interaction with the public and coworkers related to the plaintiff's moderate limitation in interacting with other people. Id.

The court considered the other two restrictions that could have been related to concentration, persistence or pace: working "in a low-stress job defined as having only occasional decision-making and occasional changes in the work setting" and engaging in work that establishes "production quotas

4

that are based on end-of-workday measurements without fast-paced production quotas"; it considered whether those restrictions would have given the VE notice of the plaintiff's moderate limitations in concentration, persistence and pace. Id. at 27. The court cited Moreno v. Berryhill, 882 F.3d 722, 730 (7th Cir. 2018), in which the Seventh Circuit rejected the Commissioner's argument that the ALJ's reference to simple work instructions and to routine, low-stress work reasonably accommodated moderate restrictions in concentration, persistence or pace where the record showed that the plaintiff had trouble becoming distracted and had difficulty concentrating. Id. at 28; See also Mischler v. Berryhill, 766 F. App'x 369, 376 (7th Cir. 2019) ("simple routine and repetitive tasks in a low stress job . . . fails to account for the moderate difficulties in concentration, persistence, and pace").

In the end, the court was not persuaded that the restrictions included in the RFC gave the VE a "heads up that [the plaintiff] had moderate limitations in concentration, persistence and pace" as noted in the record. Dkt. No. 26 at 27. For starters, the record evidence placed the plaintiff at a full-scale IQ of 67 at a percentile rank of one percent, dkt. no. 26 at 28, but there was nothing in the record to suggest that the VE was apprised of any cognitive deficits before testifying about the jobs available to the plaintiff, id. at 30-31; Dkt. No. 12-10 at 33. In crafting the RFC, the ALJ gave significant weight to the opinions of Dr. Bee and psychologist Dr. Susan Donahoo, each of whom found moderate limitations in the plaintiff's (1) ability to carry out detailed instructions, (2) maintain attention and concentration for extended periods, and (3) complete a

5

normal workday and workweek without interruptions and to perform at a consistent pace. Dkt. No. 26 at 28-29; Dkt. Nos. 12-3 at 24; 12-4 at 11, 43. The court observed that Bee found the plaintiff moderately limited in those areas but that Bee did not complete the portion of the form asking for a narrative description of the "sustained concentration and persistence capacities and/or limitations." Id. Instead, under a section titled "additional explanation," Bee wrote simply that the plaintiff "may exhibit problems concentrating on complex or simultaneous demands but she appears mentally capable of simple, well-structured task activity." Dkt. No. 26 at 25. Meanwhile, Donahoo included the following narrative regarding sustained concentration and persistence capacities and/or limitations:

> Clt's C/P/P is variable. She should be able to carry out two to three step instructions but will have difficulty carrying out directions more detailed than this, due to her cognitive limitations. Clt. has held two long term jobs without Hx of psych related decompensation. [I]n her MCSE, she indicated that her production and quality of work is acceptable. She is able to do numerous ADL's independently. She had fair concentration with her MSCE (prbs with serial computation but able to do WORLD task and focus in interview). C/P/P is adequate for unskilled work.

Dkt. No. 26 at 29; Dkt. No. 12-4 at 57.

The court could not determine how limiting the plaintiff to simple, repetitive tasks, a low-stress environment or end-of-the-day quotas would accommodate moderate limitations in the plaintiff's ability to complete a normal workday, perform at a consistent pace or maintain attention and concentration for extended periods. Dkt. No. 26 at 31. The court observed that even the ALJ acknowledged the plaintiff's function reports indicating that she

6

"was not good at paying attention and she did not finish what she started." Dkt. No. 26 at 32; Dkt. No. 12-3 at 19.

The court pointed out that the ALJ had not addressed the VE's testimony that all competitive work would be eliminated if the hypothetical individual would consistently remain off task for more than ten percent of the workday. Dkt. No. 26 at 32; Dkt. No. 12-3 at 73. The court determined that it was not clear whether by finding that that the plaintiff could perform simple tasks, the ALJ also was finding that the plaintiff never would fall off task more than ten percent of the workday (despite the moderate limitations in maintaining concentration and completing work without interruptions over the course of the day). Dkt. No. 26 at 32. Because it is the ALJ's responsibility to develop the record as necessary to make the findings because at Step Five, the court determined that the defendant failed to meet its burden. Id. at 32; Briscoe ex rel. Taylor v. Barnhart, 425 F.3d 345, 351-52 (7th Cir. 2005).

The court remanded on this single issue and affirmed in all other respects.

   C. The Defendant's Argument

In asking the court to reconsider, the defendant argues that the court erred because several Seventh Circuit decisions issued after the parties had briefed the appeal—and one decided after the court entered judgment—confirm that the ALJ's RFC assessment and corresponding hypothetical adequately accommodated the moderate rating in the broad functional areas of concentration, persistence or pace. Dkt. No. 28 at 1. The defendant asserts

7

that the court "committed a manifest error of law by concluding that the ALJ had not cleared the low bar of the substantial evidence standard and this court should affirm the ALJ's decision." Id.

Specifically, the defendant argues that Seventh Circuit authority demonstrates that limiting a plaintiff to simple, repetitive tasks *can* account for a moderate rating in concentration, persistence or pace where the case-specific facts support the limitation and where the doctor's narrative summary in Section III of the Mental Residual Functional Capacity Assessment form adequately translates the doctor's observations in the Section I worksheet. Id. at 3-4. The defendant says that since it filed its brief, the Seventh Circuit "has affirmed nearly every ALJ decision in which the [plaintiff] had a moderate rating in the broad functional area of concentration, persistence, or pace, and the ALJ adopted an RFC assessment including a restriction to simple, routine, repetitive tasks." Id. at 4.

The defendant cites Pavlicek v. Saul, 994 F.3d 777 (7th Cir. 2021)—decided after this court's ruling—in which the Seventh Circuit concluded that an RFC assessment with similar limitations adequately accounted for the plaintiff's moderate rating in concentration, persistence or pace where the state agency psychologists concluded that the limitations were sufficient to accommodate the plaintiff's impairments. Dkt. No. 28 at 4-5. The defendant also cites Recha v. Saul, Appeal No. 19-3544, 2021 WL 164914, *3 (7th Cir. Jan. 19, 2021), in which the Seventh Circuit rejected a plaintiff's argument that an RFC assessment using boilerplate limitations such as simple, routine

8

tasks was insufficient to account for the plaintiff's deficiencies in concentration, persistence or pace. Dkt. No. 28 at 5-6. The Seventh Circuit added that there was no medical opinion in the record recommending limitations beyond those in the RFC and that "an ALJ does not commit an error when 'there is no doctor's opinion contained in the record which indicated greater limitations than those found by the ALJ.'" Recha, 2021 WL 164914, *5. The defendant cites Peeters v. Saul, 975 F.3d 639, 641-42 (7th Cir. 2020), in which the Seventh Circuit concluded that an RFC limitation to simple, routine, and repetitive work accommodated the plaintiff's "[m]oderate limitations in the work setting," including moderate limitations identified by the state agency psychologists in carrying out detailed instructions, completing a normal workday and workweek without interruptions from psychologically based symptoms or performing at a consistent pace without an unreasonable number and length of rest breaks, maintaining attention and concentration for extended periods, and interacting appropriately with the general public. Dkt. No. 28 at 6.

The defendant includes a string of cites that it says supports its position. See Lockett v. Saul, 834 F. App'x 236, 239 (7th Cir. 2020); Bruno v. Saul, 817 F. App'x 238, 242 (7th Cir. 2020); Simons v. Saul, 817 F. App'x 227, 231-32 (7th Cir. 2020); Morrison v. Saul, 806 F. App'x 469, 473-74 (7th Cir. 2020); Kuykendoll v. Saul, 801 F. App'x 433, 438 (7th Cir. 2020); Urbanek v. Saul, 796 F. App'x 910, 914-15 (7th Cir. 2019); Pytlewski v. Saul, 791 F. App'x 611,

9

615-17 (7th Cir. 2019); c.f. Lothridge v. Saul, 984 F.3d 1227, 1233-35 (7th Cir. 2021) (remanding for further proceedings). Id.

According to the defendant, the court should alter or amend the judgment because the RFC assessment and corresponding hypothetical to the VE were supported by substantial evidence and the court should have affirmed the ALJ's decision. Dkt. No. 28 at 7 (citing Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019)). The defendant asserts that no doctor found the plaintiff to be more limited than did the ALJ. Id. The ALJ gave great weight to Dr. Robert Schedgick, who opined that the plaintiff could understand, remember and carry out a basic instruction and adequately focus and concentrate for at least two hours at a time and follow a routine schedule. Id. Schedgick did not believe that the plaintiff required a modified work pace or speed; could probably work on a team in a basic manner; had basic but adequate judgment, decision making skills, communication abilities, coordinating activities and overall had some "moderate-to-mild" type of difficulties. Id.

The defendant further argues that the ALJ gave significant weight to state agency psychologists Dr. Val Bee and Dr. Susan Donahoo. Bee completed an MRFCA form in April 2015 and found the plaintiff moderately limited in the ability to understand and remember detailed instructions, carry out detailed instructions, maintain attention and concentration for extended periods and complete a normal workday and workweek without interruption and perform at a consistent pace. Id. at 8. Donahoo completed an MRFCA form in August 2015, finding the same moderate imitations but opining that the plaintiff's

10

concentration, persistence or pace was variable but adequate for unskilled work. Id.

The defendant asserts that the checklist observations cited by the court are "perhaps less useful to an ALJ" than a doctor's narrative summary. Id. at 9 (citing Urbanek, 796 F. App'x at 915). The defendant points to the finding in Pavlicek that a limitation to simple, repetitive tasks was "in fact consistent with" the state agency psychologist's Section I ratings of "moderately limited" in the area of concentration and persistence. Id. at 10 (citing Pavlicek, 994 F.3d at 783). The defendant also cites Pytlewski v. Saul, 791 F. App'x 611, 615-16 (7th Cir. 2019), where the Seventh Circuit held that the state agency psychologists' narrative summaries concluding that the plaintiff "could maintain concentration and persistence to complete workweeks performing simple repetitive tasks were consistent with their Section I ratings of 'moderately limited' in maintaining attention and concentration for extended periods." Id.

The defendant argues that Dr. Bee's checklist observations were consistent with her narrative opinion that the plaintiff would have difficulty concentrating on detailed or complex but not simple tasks. Id. at 11. The defendant further contends that Dr. Donahoo's narrative opinion is consistent with her checklist observations that the plaintiff's concentration, persistence or pace was variable but adequate for unskilled work. Id. The defendant emphasizes that the state agency doctor's narrative opinions did not conflict with their checklist observations. Id. at 12. The defendant maintains that the

11

ALJ's decision more than meets the "not high" standard for substantial evidence. Id. at 13.

Finally, the defendant argues that the court erred in finding that the ALJ failed to account for the likelihood that the plaintiff could be off-task for more than ten percent of the day. Id. The defendant asserts that the ALJ's hypotheticals were designed to develop the record so that he could make a decision after he had reviewed and considered the evidence and made findings about the plaintiff's condition. Id. at 14. Because the ALJ did not include an off-task limitation in the RFC assessment, the defendant argues that the VE's response to the hypothetical about being off-task is immaterial. Id. The defendant points to the Seventh Circuit's decision in Winstead v. Berryhill, 915 F.3d 466 (7th Cir. 2019) (amended and superseded on denial of reh'g by 923 F.3d 472 (7th Cir. 2019), in which it eliminated the suggestion that the ALJ must discuss every hypothetical question posed to the VE. Id. at 15. The defendant says that the cases cited by this court do not dictate remand because they were decided before the regulations clarified what was meant by "moderate." Id. at 16-18. The defendant argues that "the Seventh Circuit's recent jurisprudence clarifies that although a restriction to simple tasks is not *always* sufficient to account for a [plaintiff's] moderate difficulties with concentration, persistence, or pace, such a restriction is appropriate where supported by the particular facts of the case." Id. at 18. The defendant also asserts that agency policy makes clear that a VE should play no role in

determining the RFC, and does not opine on a medical condition, review the medical records or draw conclusions. Id. at 18-19.

The plaintiff did not respond to the defendant's motion.

D.  Analysis

The concentration, persistence and pace issue has been heavily litigated; in the court's view, that litigation made the decision in this case a close call. The Seventh Circuit had made clear that eliminating strict production quotas or a fast pace—without more—does not adequately account for a moderate limitation in maintaining concentration, persistence or pace. DeCamp, 916 F.3d at 675–76; O'Connor-Spinner v. Colvin, 832 F.3d 690, 698 (7th Cir. 2016). But at the time of the court's ruling, the Seventh Circuit had not addressed the defendant's amendment to the Social Security regulations defining "moderate limitations."

On April 7, 2021, the Seventh Circuit found that an ALJ adequately relied on a narrative RFC because it was consistent with "moderate" checklist ratings. Pavlicek, 994 F.3d at 783. In Pavlicek, the ALJ crafted an RFC limiting the plaintiff to medium work, limiting the plaintiff to:

> understanding, remembering and carrying out simple instructions and routine, repetitive tasks; that he only make simple work-related decisions in an environment without fast-paced production requirements and with few or no changes in work duties; and that he be limited to only occasional, brief, and superficial interaction with the public and coworkers, and only occasional interaction with supervisors.

Id. at 781. Focusing on the checklist portion of the form rating him as moderately limited in maintaining concentration, persistence and pace, the

13

plaintiff argued that the checklist conflicted with the narrative portion stating that he could perform at a consistent pace if he engaged in simple, repetitive tasks. Id. at 783. The Seventh Circuit determined that the ALJ reasonably relied on the consultants' narrative RFC because it was consistent with the moderate checklist ratings. Id. The court recounted that a "moderate limitation" is defined by the regulation to mean that the plaintiff's functioning in that area is "fair." Id. (citing 20 C.F.R., Part 404, Subpart P, App. 1). Relying on the common usage of "fair," the court determined that a moderate limitation would not mean "bad" or "inadequate" and would be consistent with the ability to perform "simple, repetitive tasks at a consistent pace." Id.

Some courts have interpreted Pavlicek to mean that a moderate limitation is adequately accommodated when an ALJ restricts a plaintiff to simple, routine and repetitive tasks, while others have concluded that Pavlicek merely reiterates that it may be sufficient if there is record evidence to logically support that determination. See Keith K. v. O'Malley, Case No. 23 CV 1622, 2024 WL 4723622, *7 (N.D. Ill. Nov. 8, 2024). This court reads Pavlicek as continuing to require evidence that logically supports the ALJ's determination. Certainly, the holding is consistent with precedent stating that ""[e]ven generic limitations, such as limiting a plaintiff to simple, repetitive tasks, may properly account for moderate limitations in concentration, persistence, and pace, so long as they 'adequately account for the plaintiff's demonstrated psychological symptoms' found in the record." Urbanek, 796 F. App'x at 914 (citing Jozefyk v. Berryhill, 923 F.3d 492, 498 (7th Cir. 2019)).

That said, these decisions do not alleviate the concerns this court expressed when issuing its decision. The ALJ included three limitations to accommodate the plaintiff's moderate limitations in concentration persistence and pace: "simple, routine and repetitive tasks," working "in a low-stress job defined as having only occasional decision-making and occasional changes in the work setting" and with "production quotas that are based on end-of-workday measurements without fast-paced production quotas." With the plaintiff's IQ placing her in the bottom one percentile, dkt. no. 12-10 at 33, her statements about not being "good at paying attention" and not finishing what she started, dkt. no. 12-3 at 19, and the moderate limitations in this area acknowledged by all doctors, it wasn't clear to this court how medium work, with simple, repetitive tasks, a low-stress environment or end-of-the-day quotas would accommodate moderate limitations in the plaintiff's ability to complete a normal workday and perform at a consistent pace or maintain attention and concentration for extended periods.

Dr. Bee found moderate limitations but did not complete the section under each limitation that asked for an explanation—in narrative form—about sustained concentration and persistence capacities or limitations. Dkt. No. 12-4 at 10-11. Under "MRFC—Additional Explanation," Bee said that the plaintiff may have problems concentrating but appeared mentally capable of "simple, well-structured task activity." Id. at 11. Dr. Donahoo observed simply that the plaintiff's sustained concentration and persistence capacities were "variable" but found that she had "fair concentration in her MSCE." Id. at 57. Dr.

15

Schedgick found that the plaintiff could focus for a least two hours and said nothing more about her how long she could work at a consistent pace or maintain attention and concentration. Dkt. No. 12-10 at 35.

It is well-established that an ALJ must apprise the vocational expert of all the claimant's symptoms. Moreno, 882 F.3d at 730. It wasn't clear to this court that that happened here. It was noteworthy to the court that when the ALJ added a limitation of being off task for more than ten percent of the workday, the VE responded that all competitive work would be eliminated. Dkt. No. 12-3 at 73. The court focused on the fact that the ALJ did not include any limitations regarding off-task time even though Bee and Donahoo found that the plaintiff would be moderately limited in this area. The court acknowledged that the ALJ may have interpreted "moderate" or "fair" to mean the plaintiff would never fall of task more than ten percent of the workday, but he didn't say that. This left the court guessing as to whether the limitations that the ALJ included adequately accommodated the moderate limitations identified by the consulting examiners, specifically Bee and Donahoo.

Still, the court agrees with the defendant that it should have affirmed the Commissioner. An ALJ does not commit an error when "there is no doctor's opinion contained in the record which indicated greater limitations than those found by the ALJ." Recha, 2021 WL 164914, at *5. The ALJ cited the plaintiff's Function Report, filed in January of 2015, which indicated that her impairments did not interfere with the completion of tasks. Dkt. Nos. 12-3 at 19; 12-8 at 34 (the plaintiff did not check "completing tasks" as impacted by

16

her "illness, injuries or conditions"). The ALJ cited Dr. Schedgick, who found that the plaintiff "can adequately focus and concentrate for at least 2 hours" and was "doing it for more at this time." Dkt. Nos. 12-3 at 19; 12-10 at 35. The ALJ recounted that Schedgick confirmed the plaintiff's diagnosis of a mild intellectual disability, learning disorder, speech/language disorder and a full-scale IQ score of 67. Dkt. No. 12-3 at 22. The ALJ found Schedgick's opinion to be consistent with the record and observed that—notwithstanding the mild intellectual disability—the plaintiff's "concentration, insight and judgment" are adequate to follow simple instructions. Id. at 24.

The court cannot locate in the record any medical opinion recommending limitations greater than those the ALJ included in the RFC. Because the plaintiff did not respond to the defendant's motion, the court again reviewed the plaintiff's initial brief and reply in support of her appeal. The plaintiff cited her subjective statements about not being able to finish what she starts, but the ALJ found her statements about the "intensity, persistence and limiting effects of her symptoms" to be "inconsistent with the evidence," dkt. no. 12-3 at 22. The plaintiff did not challenge the ALJ's credibility determination.

The court also found no opinions suggesting that a mild cognitive impairment—an IQ of 67—necessarily translates into an off-task limitation. In her reply brief in support of her appeal, the plaintiff argued that she was not required to identify any additional limitations (because that is the ALJ's responsibility). But in Jozefyk, 923 F.3d at 498, the court found harmless error where the plaintiff failed to hypothesize a restriction that might have addressed

17

the plaintiff's limitations in concentration, persistence or pace. In the absence of any argument from the plaintiff regarding what medical opinion or evidence would support a greater limitation, the court agrees with the defendant that it should have found any failure to connect the moderate limitations to the RFC to be harmless. The court will amend the judgment to affirm the Commissioner.

## II. Plaintiff's Motion for Attorney's Fees

Because the court will enter an amended judgment to affirm the decision of the Commissioner, the plaintiff no longer is the prevailing party and so is not entitled to attorney's fees. The court will deny as moot the plaintiff's motion for attorney fees.

## III. Conclusion

The court **GRANTS** the defendant's Rule 59(e) motion to alter or amend judgment. Dkt. No. 27.

The court **VACATES** the March 22, 2021 judgment. Dkt. No. 25. The clerk will enter an amended judgment affirming the decision of the Commissioner.

The court **DENIES AS MOOT** the plaintiff's motion for attorney fees. Dkt. No. 29.

Dated in Milwaukee, Wisconsin this 24th day of June, 2025.

BY THE COURT:

_____
HON. PAMELA PEPPER
**Chief United States District Judge**

18

Case 1:19-cv-00620-PP    Filed 06/24/25    Page 18 of 18    Document 31